THOMAS M. FARRELL AND JO ANN FARRELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Farrell v. Commissioner
Docket Nos. 35307-83, 23084-84.
United States Tax Court
T.C. Memo 1986-262; 1986 Tax Ct. Memo LEXIS 346; 51 T.C.M. (CCH) 1275; T.C.M. (RIA) 86262; June 26, 1986. R. Bertil Peterson and George Lynch (specially recognized), for the petitioners. Frank Laurino, for the respondent. PARR
MEMORANDUM OPINION PARR, Judge: Respondent determined deficiencies and additions to tax in petitioners' 1980 and 1981 Federal income tax liabilities as follows: Additions to Tax, I.R.C. 1954
Year
Deficiency
Sec. 6653(a) [1]
Sec. 6653(a)(1)
Sec. 6653(a)(2)
1980
$5,271.00
$263.55
1981
9,076.00
$454.00
50% of the
interest due
on $9,076.00
On February 10, 1986, we granted respondent's motion to dismiss for failure to properly prosecute, pursuant to Rule 123(b). [2] At that time, we took under advisement respondent's *347 motion for damages under section 6673. After examining the entire record, we feel that the imposition of damages is warranted here. At the time of filing the petitions in these consolidated cases, petitioners resided in Brooklyn, N.Y. On their tax returns for 1980 and 1981, petitioners claimed charitable contributions to the Universal Life Church ("ULC") in the amounts of $15,410.00 and $25,495.00, respectively. In his notices of deficiency, respondent disallowed these claimed deductions.In addition, respondent disallowed a portion of petitioners' miscellaneous, job-related deductions claimed in 1980. Respondent also determined additions to tax for negligence as to both tax years. After receiving each notice of deficiency, petitioners filed a petition in this Court for a redetermination of the deficiencies and additions to tax. The petitions were on pre-printed, fill-in-the-blank forms apparently provided by the ULC. The petition for 1980 disputed only the disallowed charitable contributions. Attached to both petitions were copies of pre-printed ULC contribution receipts apparently intended *348 to substantiate petitioners' claimed contributions deductions. Upon motion by respondent, the cases were consolidated for trial, briefing, and opinion on January 2, 1986. Both cases were set for trial at the trial session of this Court in New York, N.Y., to commence on January 13, 1986. Prior to trial, two subpoenas duces tecum, dated January 8, 1986 were issued, commanding each petitioner to appear at the Court's January 13, 1986 trial session, and to bring various documents and records relating to their claimed contributions to the Universal Life Church. The documents and records requested included correspondence with the ULC; their own ULC chapter's charter; lists of its officers and directors; records of all meetings held by their ULC chapter; all checking and savings account records in their own or their ULC chapter's name; and copies of all checks and other records which would substantiate their charitable contributions during the years at issue. Prior to service of the subpoenas, on the afternoon of January 10, 1986, respondent's counsel Mr. Laurino met with Mr. Lynch, petitioners' representative. Mr. Laurino showed Mr. Lynch a copy of the subpoena, reviewed it with *349 him, and gave him a courtesy copy. A short time later that day, petitioner Thomas Farrell, knowing the subpoenas were coming, shipped various documents to ULC headquarters in Modesto, California. At about 6:00 p.m. that evening, petitioners were served with their subpoenas. When the case was called for trial on January 14, 1986, Mr. Lynch and his partner, Mr. Peterson, appeared on behalf of petitioners. Mr. Peterson is admitted to practice before this Court and had entered an appearance in the case. Mr. Lynch is not admitted to practice in the Tax Court. Respondent informed the Court that petitioners had failed to comply with the subpoenas duces tecum, in that they had failed to provide all of the requested documents. Respondent made an oral motion to dismiss the case for failure to properly prosecute, and to award section 6673 damages. When questioned about his failure to comply with his subpoena, Mr. Farrell testified that he had mailed away certain "church" checking account records to ULC headquarters at the latter's request, about two hours before he was served with the subpoena. He said that while he knew he would be served with a subpoena, he did not know which records *350 would be requested. He further stated that the records would be returned to him upon his request. In response to questioning by the Court, Mr. Lynch confirmed having received a copy of the subpoena to be served on his clients, but said he had no knowledge of the records being mailed to California that afternoon; rather, he thought the records had been sent to California at another time in the normal course of business. Mr. Peterson assured the Court that the documents could be retrieved from ULC headquarters upon request, and that he would subpoena them if necessary. He therefore asked for a continuance in order to obtain the records. We agreed to continue the case to the next trial session, beginning February 10, 1986. We advised petitioners: I want to make another thing clear, that I'm not pleased with the way the petitioners have behaved in this case. I think there are some games being played here and the Court is not amused. * * * I want it made very clear that I expect full compliance or this case will be dismissed. On January 29, 1986, the Court, Mr. Lynch and Mr. Laurino took part in a conference call. The Court asked Mr. Lynch whether the documents had been turned *351 over. They had not. The Court directed Mr. Lynch not to wait for the ULC to voluntarily return the documents. Mr. Lynch stated that petitioners' subpoena on the ULC would be served the next day (January 30, 1986). The Court reminded Mr. Lynch that the subpoenas had to be complied with by February 10, 1986. Also, on January 29, 1986, the Court set a date certain of February 21, 1986 for trial of this case, for the convenience of Mr. Peterson. A few days later, Mr. Lynch telephoned the Court to inquire whether he had to be present at calendar call on February 10, since a date certain had been set for February 21. Mr. Lynch was informed that he did have to be present unless the documents subpoenaed by respondent had been turned over. Another conference call was held on February 5, 1986, between the Court, respondent and Mr. Peterson. The Court again asked Mr. Peterson whether he had served his promised subpoena on the ULC. Mr. Peterson relied that he had "requested" documents and ULC had not yet refused to return them. No subpoena had been served. Mr. Peterson said he intended to use a return date of February 21. The Court told him the documents had to be in respondent's *352 hands by February 10. Mr. Peterson informed the Court that he could not be present at calendar call on February 10, 1986 because of another commitment. The Court agreed to specially recognize Mr. Lynch, who is not otherwise admitted to practice before this Court, to represent petitioners at the February 10, 1986 calendar call. Again, we reminded petitioners that the case would be dismissed if the documents were not produced. At calendar call on February 10, 1986, the Court inquired whether petitioners had complied with the subpoenas. They had not. Respondent renewed his motion, in writing, for dismissal of the case and for damages. At a hearing on the motion later that same day, petitioners stated that after numerous attempts to contact ULC in order to retrieve the documents, by telephone and by letter, they had served a subpoena on the ULC, but had not yet received the documents. Petitioners then claimed that based on the January 29, 1986 conference call with the Court and respondent, they had expected the motion to be heard on February 21, 1986, and requested the 11 extra days to produce the documents. The Court replied that it was clear to all parties involved that the subpoenas *353 had to be complied with by calendar call. The Court further noted that any subpoena served by petitioners on ULC was not until after the February 5, 1986 conference call. We stated that we believed petitioners had not acted in good faith, and we dismissed the case for failure to properly prosecute. We took under advisement respondent's motion for damages at that time. Pursuant to section 6673, this Court is authorized to award damages not in excess of $5,000 whenever it appears to us that the proceeding has been instituted or maintained primarily for delay, or that a taxpayer's position is frivolous or groundless. Our review of the facts of this case leads us to the conclusion that petitioners did indeed institute and maintain these proceedings primarily for delay, and that their position was frivolous or groundless. To begin with, not one legitimate issue was raised in either petition filed in this case. [3] Petitioners disputed respondent's disallowance of their claimed contributions to the Universal Life Church. This Court has repeatedly held that such amounts do not qualify as charitable contributions, and has sustained the addition to tax for negligence in such cases. See, *354 e.g., ; , affd. by unpublished opinion . [4] We find petitioners' position to be against longstanding Tax Court authority, and to be without merit. As such, damages under section 6673 are appropriate. We further find that petitioners instituted and maintained these proceedings primarily for purposes of delay. It is obvious to us that petitioners had no intention of *355 producing the documents called for in the subpoenas, and that their repeated assurances to the Court were not in good faith.We find incredible Mr. Farrell's testimony that he did not know which documents would be requested in the subpoenas at the time he mailed the records to California. We also find unconvincing Mr. Lynch's statements that he did not know that the documents were mailed following his meeting with respondent and before service of the subpoenas. Lastly, the fact that petitioners did not retrieve the documents after repeated assurances that they would do so, and after being granted four additional weeks for this purpose, makes clear that their intentions were never to produce the records. Petitioners' conduct in regard to the subpoenas justified our dismissal of this case. It also evidenced a disrespect for this Court, and showed that they had no desire for a resolution of this case through a trial on the merits. In other cases in which taxpayers have tampered with or refused to produce requested documents, we have seen fit to impose damages. See ; ; *356 ; . As the facts outlined above indicate, the Court has gone out of its way to accommodate petitioners. After deliberately tampering with subpoenaed documents, petitioners were granted a four-week continuance in order to comply with their subpoenas. Petitioners' counsel, Mr. Lynch, was specially recognized by the Court when Mr. Peterson could not appear at calendar call. A date certain for trial was set well in advance of the trial session in order to accommodate Mr. Peterson's schedule. Lastly, in numerous phone calls, the Court took time to repeatedly remind petitioners' counsel of their obligations. In return, petitioners have merely wasted the time and effort of this Court and of respondent. As we stated in , we find that petitioners' entire course of conduct indicates that they instituted and maintained these proceedings primarily for purposes of delay. We therefore award damages to the United States in the amount of $3,000 in docket No. 35307-83 and $5,000 in docket No. 23084-84. An appropriate *357 order and decision will be entered.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. The notice of deficiency relating to 1980 raised another, seemingly legitimate, issue regarding business expenses; however, that issue was not disputed in the petition. ↩
4. We also note that we have repeatedly rejected petitioners' pre-printed "contribution receipts" as admissible evidence in these cases. ; , affd. by unpublished opinion ; , affd. .↩